UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Jeffrey Evans,** | : | **Case No. 09-cv-1344** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| v. | : | |
| **Hanger Prosthetics & Orthotics, Inc., et al.** | : | **MEMORANDUM & ORDER** |
| **Defendants.** | : | |

Before the Court is Plaintiff Jeffrey Evans' ("Evans") Motion for Leave *Instanter* to File an Amended Complaint. (Doc. 19.) In this Motion, Evans seeks to add two individuals as defendants pursuant to Rule 15 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1447(e). Defendant Hanger Prosthetics & Orthotics, Inc. ("Hanger") filed a Motion to Dismiss and Brief in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint. (Doc. 21.)[1] For the reasons set forth below, the Court **DENIES** Evans' Motion to Amend to the extent that it seeks to add new defendants to the case and **GRANTS** the remainder of the motion. Additionally, as explained below, the Court **DENIES** Hanger's Motion to Dismiss, but sua sponte dismisses Evans' common law claims without prejudice to reasserting these claims under the Ohio Products Liability Act ("OPLA"). Within ten (10) days from the date of this Order, Evans shall file an Amended Complaint consistent with the findings and directives in this opinion

---

[1] In the Brief in Opposition to Evans' Motion to Amend, Hanger argues that granting leave to amend would be futile because, Hanger asserts, Evans cannot sustain any claims against any defendants because he no longer has access to the allegedly defective product upon which his claims are premised. While Hanger never cites Rule 12(b)(6), nor otherwise explains why its filing is also captioned as a Motion to Dismiss, the Court assumes Hanger seeks dismissal based on this same argument.

I. **BACKGROUND AND PROCEDURAL HISTORY**

This dispute arises from the malfunctioning of Evans' prosthetic leg, which he purchased from Hanger.[2]

In 1995, Evans lost his right leg in an accident. Although it is unclear from the record what occurred in the intervening years, in 2002, Evans purchased his first prosthetic from Hanger's facility in New Philadelphia, Ohio. (Doc 24 at 2.)[3] Over the next few years, Evans' residual limb shrunk, which forced him to return to Hanger to obtain a new prosthetic leg in 2005. (*Id.* at ¶ 10.) The new prosthetic was cast by licensed prosthetist Joseph Yanke ("Yanke"), an employee of Hanger. (*Id.* at ¶¶ 3, 11.) The socket for the new leg, however, did not fit correctly. Over the next eighteen months, Evans returned repeatedly for fittings, but Yanke was unable to fix the leg. (*Id.* at ¶ 13.) As a result, Evans continued to wear the leg that Hanger produced in 2002. (*Id.* at ¶ 15.)

In 2007, Evans decided to get a second opinion about the difficulties with his 2005 prosthetic, this time from a doctor in Canton, Ohio. This doctor informed him that he needed a properly fitting socket and advised Evans to go see Kyle Underwood ("Underwood"), a licensed prosthetist and also an employee of Hanger, at Hanger's facility in Canton, Ohio. (*Id.* at ¶¶ 5, 16.)

When Evans went to see Underwood, he took a new cast of his leg. (*Id.* at ¶ 18.) Over the next few weeks, he went in for more fittings, but Underwood was no more successful than Yanke, which forced Evans to continue to wear his 2002 prosthetic leg. (*Id.* at ¶ 20.) During one of Evans'

---

[2]For purposes of this motion, the Court must assume that all of the facts described in the Complaint are true.

[3]Evans asserts that he purchased his prosthetic leg from Hanger in 2000 or 2001. (Doc. 19-1 at ¶¶ 8-9.) Hanger, however, contends that Evans purchased his prosthetic from Hanger in 2002. (Doc 24 at 2.) The Court refers to the leg as the "2002 prosthetic," but neither that reference, nor the actual date of purchase of that first prophetic affects the resolution of the pending motions.

visits, however, Underwood informed him that prosthetic legs usually have four bolts, yet Evans' 2002 prosthetic only had three bolts and some kind of shim to attach the joint, bolts, and socket. (*Id.* at ¶ 21.)[4]

A few weeks later, in April of 2007, the 2002 prosthetic leg malfunctioned and Evans once again returned to Underwood for assistance. When Evans tried the leg on in the office after Underwood worked on it, Evans informed Underwood that it still "felt funny" when he walked on it. Underwood assured him that the leg would not break and that it was safe, even if it only had three bolts. (*Id.* at ¶ 22.)

Within one hour of returning home from his visit, the socket of his 2002 prosthetic leg broke, which caused Evans to fall down a hill and to suffer serious injuries. (*Id.* at ¶ 23.)[5] Evans asserts that the prosthetic was negligently molded and/or constructed and that its defective design and manufacture caused his injury. (*Id.* at ¶¶ 24-25.)

On March 13, 2009, Evans filed a complaint in the Court of Common Pleas in Tuscarawas County, Ohio, which sought compensatory damages in excess of $25,000.00. (*Id.* at 7.) On May 21, 2009, however, Hanger requested a written statement describing the actual amount of recovery sought, and Evans clarified that he was seeking $250,000.00 in damages. (Doc. 1-6.) Hanger then filed a Notice of Removal in this Court on June 6, 2009 pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and 1446. (Doc. 1.) Evans is a citizen of Ohio, while Hanger is a Delaware corporation with its principal place of business in Maryland. (*Id.* at 2.) Subject matter jurisdiction, therefore, is proper

---

[4] The Court interprets the Complaint to imply that Underwood found this to be a less stable configuration.

[5] Hanger contends that the injury occurred on or about April 24, 2007. (Doc. 24 at 2.) This date is consistent with the time frame provided by Evans and the Court will assume for present purposes that the injury occurred on that date.

on the basis of diversity of citizenship under 28 U.S.C. § 1332.[6]

Evans' filed his Motion for Leave *Instanter* to File Amended Complaint on September 17, 2009. (Doc. 19.) Evans' Amended Complaint proposes to join Underwood and Yanke, both of whom are citizens of Ohio and employees of Hanger, as defendants in this case, which would destroy diversity jurisdiction. On October 2, 2009, Hanger filed its Motion to Dismiss and Brief in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint. (Doc. 21.)

## II. MOTION TO AMEND

The first issue before the Court is whether Evans should be allowed to amend his Complaint to join two non-diverse parties, which would require remand of the case to state court. Evans makes what are essentially two main arguments regarding his Motion to Amend: 1) the Court should grant him leave to amend his Complaint and to join the two new defendants as he is not trying to destroy diversity jurisdiction but, rather, is trying to fully adjudicate all of his claims against all of the defendants in one lawsuit (Doc. 19 at 3); and 2) joinder is not futile since professional negligence claims are subject to a four-year statute of limitations as stated in O.R.C. § 2305.09. (Doc. 22 at 6.) Hanger argues that Evans' Motion should be denied because: 1) the two-year statute of limitations for products liability claims under O.R.C. § 2305.10 and the one-year statute of limitations for medical malpractice claims under O.R.C. § 2305.11 bar Evans' claims against Underwood and Yanke (Doc. 24 at 6); 2) the Amended Complaint does not relate back under Rule 15(c) of the Federal Rules of Civil Procedure (Doc. 21 at 7); and 3) the proposed amendment would be futile because Evans' does nto have access to the 2002 prosthesis any longer.

---

[6] The parties appear to assume that Ohio law applies. The Court agrees: it will apply Ohio law to this case as the injury occurred in Ohio and no other jurisdiction has a more significant relationship to the lawsuit. *See In Re: Commercial Money Ctr., Inc, Equipment Lease Litigation*, 603 F. Supp. 2d 1095, 1108 (N.D. Ohio 2009).

### A. Governing Law

The Court's decision whether to grant leave to amend the pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) provides, in part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend should be denied, however, "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Where a party seeks to amend a complaint after the statute of limitations for a claim has expired, he or she may do so only where Rule 15(c) allows the amendment to relate back to the date of the original complaint. Rule 15(c) provides that an amendment relates back when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) [120 days] for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

**B.     Discussion**

Whether Evans may amend his complaint turns on two threshold questions: 1) the Court must determine whether joinder of the two new defendants is barred by the statute of limitations; and 2) if so, whether the amendment relates back under Rule 15(c).[7]  The Court will first turn to the applicable statute of limitations for the claims in Evans' Amended Complaint.

   **1.     Statute of Limitations**

The first two causes of action in the Amended Complaint are product liability claims.[8]  The applicable statute of limitations for product liability claims is found in O.R.C. § 2305.10, which provides that "an action based on a product liability claim . . . shall be brought within two years after the cause of action accrues." Ohio Rev. Code § 2305.10.  The accident at issue in this case occurred on or about April 24, 2007.  (Doc. 24 at 2.)  Evans filed his Motion to Amend on September 17, 2009. (Doc. 19.)  The time span between the accident and the date of the Motion to Amend is greater than two years.  The statute of limitations for the product liability claims, therefore, has already expired. Accordingly, joinder is not permissible unless the amendments relate back to the date of the filing of the Complaint under Rule 15(c).

The proposed Amended Complaint seeks to add an additional claim of professional negligence against Underwood and Yanke to Count Five.[9]  The parties disagree which statute of limitations

---

[7] Given the Court's resolution of these initial questions, the Court will defer consideration of Hanger's futility argument until its analysis of Hanger's Motion to Dismiss.

[8] For the reasons discussed below, Counts Three, Four, Counts Six, and Seven of the proposed Amended Complaint are not viable claims.  The Court does not, accordingly, address what statute of limitations might be applicable to such claims.

[9] As the Court explains below, the remainder of Count Five contains additional allegations that do not assert viable claims.

applies to this professional negligence claim as no court in Ohio has decided what the appropriate statute of limitations is for injuries resulting from the negligence of prosthetists. Hanger argues that, because the services provided by prosthetists are medical in nature and because the claims against the prosthetists are analogous to medical claims under O.R.C. § 2305.113, the one-year statute of limitations for medical malpractice claims should apply to this case. (Doc. 24 at 6.) The medical malpractice statute explains in relevant part that "an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued." Ohio Rev. Code § 2305.113(A). The statute then proceeds to define a medical claim as:

> any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home or residential facility, or against a licensed practice nurse, registered nurse, advanced practice nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person.[10]

Ohio Rev. Code § 2305.113(E)(3). The Supreme Court of Ohio, however, determined that "for purposes of the [O.R.C.] 2305.113(A) one-year statute of limitations, a medical claim under [O.R.C.] 2305.113(E)(3) is a claim that both (1) arises out of the medical diagnosis, care or treatment of any person and (2) is asserted against one or more of the statutorily enumerated medical providers." *Estate of Stevic v. Bio-Medical Application of Ohio, Inc.*, 121 Ohio St. 3d 488, 491, 2009 Ohio 1525,

---

[10] Hanger relies, in part, on the definition of a medical claim in O.R.C. § 2305.11(D)(3), the statutory predecessor to O.R.C. § 2305.113(E)(3), and argues that courts have used the statutory predecessor to interpret the current definition of medical claims. (*See* Doc. 24 at 6.) The cases cited by Hanger, however, address causes of action that arose before April 1, 2003 when the medical malpractice statute was changed to O.R.C. § 2305.113, and only used the old definition of a medical claim because O.R.C. § 2305.113 cannot be applied retroactively. *See Kovacic v. City of Eastlake*, 2006 Ohio 7016, ¶¶ 60-61 (Ohio Ct. App, Lake County Dec. 29, 2006). Accordingly, this Court will only use the current definition of a medical claim under O.R.C. § 2305.113(D)(3) in its analysis.

905 N.E.2d 635 (2009). While the claims Evans asserts against Underwood and Yanke relate to medical treatment, prosthetists are not one of the medical providers enumerated in the statute. The one-year statute of limitations in O.R.C. § 2305.113, therefore, does not apply in this particular instance.

Evans asserts that, because the claim against Underwood and Yanke does not fall under the medical malpractice statute of limitations, the four-year statute of limitations for professional negligence in O.R.C. § 2305.09 should apply. (Doc. 22 at 6.) Evans provides an extensive list of professionals, including accountants, investment advisors, surveyors, insurance agents, title agents, and engineers, as to whom claims against them are governed by a four-year statute of limitations. *See id.* Evans' attempt to analogize his claims against Yanke and Underwood to claims against these listed professionals is unpersuasive, however. The Supreme Court of Ohio has explained that "the two-year statute of limitations contained in [O.R.C.] 2305.10 governs claims of bodily injury resulting from the alleged negligence of health-care professionals other than those expressly included in [O.R.C.] 2305.11." *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 180, N.E.2d 206 (1989). *See also Whitt v. Columbus Coop.*, 64 Ohio St. 2d 355, 415 N.E.2d 985 (1980); *Richardson v. Doe*, 176 Ohio St. 370, 199 N.E.2d 878 (1964).[11] The claim of professional negligence against Underwood and Yanke fits into the category of claims described in *Investors REIT One* because it relates to Evans' injury, which allegedly resulted from the negligence of Underwood and Yanke while acting in their capacity as health care professionals. The applicable statute of limitations for the claims against the prosthetists, therefore, is the two-year statute of limitations in O.R.C. § 2305.10; both wrong when they argue for alternative periods of limitation.

---

[11] As noted above in footnote 4, O.R.C. § 2305.11 is now O.R.C. § 2305.113.

Thus, Evans' cause of action accrued on April 24, 2007. Since he failed to join any additional defendants by April 24, 2009 when the statute of limitations expired for the product liability claims and any professional negligence claim, his claims against Yanke and Underwood are time-barred unless they relate back to filing of the original Complaint under Rule 15(c) of the Federal Rules of Civil Procedure.[12]

### 2.  Relation Back

There are three possible ways Evans' Amended Complaint can relate back to the date of the original Complaint under Rule 15(c):

First, an amendment can relate back "if the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. Pro. 15(c)(1)(A). In this case, O.R.C. § 2305.10 provides the applicable statute of limitations for all of Evans' valid claims and contains no relation back provision. The Sixth Circuit has interpreted Rule 15(c)(1)(A) to require that the statute

---

[12] Evans does not assert that he is entitled to equitable tolling, nor could he in these circumstances. In the Sixth Circuit, courts are to consider the following five factors when determining whether to equitably toll a statute of limitations: 1) the petitioner's lack of notice of the filing requirement; 2) the petitioner's lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the respondent; and 5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001) (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). The factors, however, "are not comprehensive, nor is each of the five factors relevant in all cases." *Griffin v. Rogers*, 399 F.3d 626, 635 (6th Cir. 2005) (citing *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002)). Rather, courts must consider equitable tolling on a "case-by-case basis." *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004). Typically, equitable tolling is only applied when "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000) (citations omitted). In this case, Evans had ample opportunity to join Underwood and Yanke as defendants before the statute of limitations ran since he repeatedly went to see both prosthetists for treatment and knew of their connection to his accident. Evans' failure to meet the deadline, therefore, did not arise from circumstances beyond his control, but, rather, from his lack of diligence. Accordingly, equitable tolling would not apply in this case.

providing the governing statute of limitations contain an express relation back provision before the rule may apply. *Lovelace v. O'Hara*, 985 F.2d 847, 851-52 (6th Cir. 1993). Because O.R.C. § 2305.10 does not contain a relation back provision, Evans' amendment does not relate back under Rule 15(c)(1)(A).

The second circumstance under which an amendment may relate back is where it seeks to add claims against parties already involved in the proceedings. Fed. R. Civ. Pro. 15(c)(1)(B). Evans' Amended Complaint does not add claims against parties already involved in the action, but, rather, seeks to add parties, making Rule 15(c)(1)(B) inapplicable.

The third possibility for relation back applies in certain instances where, as here, "the amendment changes the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. Pro. 15(c)(1)(C). Rule 15(c)(1)(C) only allows relation back as to new party defendants, however, where, within 120 days of the filing of the original action, the party to be brought in by amendment: (1) received notice of the pending action; and (2) knew or should have known that an action would have been brought against him. Fed. R. Civ. Pro. 15(c)(1)(C)(i)-(ii).

Evans' Amended Complaint does not qualify for relation back under Rule 15(c)(1)(C)(i) because Yanke and Underwood did not receive notice of the action within the 120 day time limit. Evans filed the original Complaint on March 13, 2009 (Doc. 1-1) and filed his Motion to Amend on September 17, 2009. (Doc. 19). Underwood and Yanke, therefore, did not receive notice of the action until over 180 days after the filing of the Complaint, which is well outside of the 120 day time limit provided in Rule 15(c)(1)(C).

Evans' proposed amendment also fails to relate back under Rule 15(c)(1)(C) because it does not satisfy the second requirement in Rule 15(c)(1)(C)(ii), which provides that the newly-named defendant "knew or should have known that the action would have been brought against it, but for a

-10-

mistake concerning the party's identity." Fed. R. Civ. Pro. 15(c)(1)(C)(ii).  In Evans' Complaint, he brought suit against Hanger and also included "John Doe" defendants.  The Sixth Circuit, however, has held consistently that "substituting a named defendant for a 'John Doe' defendant is considered a change in parties" that does not relate back.  *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). Evans cannot use a "John Doe" pleading to circumvent the statute of limitations.   There was never, moreover, any mistake concerning the prosthetists' identity.  Evans repeatedly went to see both Underwood and Yanke and knew of their involvement with his prosthetic leg at the time the accident occurred.   Because there was no mistake concerning the prosthetists' identity, there was no reason why Evans could not have brought claims against them when he filed his Complaint.

For the reasons set forth above, Evans' amendment does not relate back under Rule 15(c). Accordingly, the Court **DENIES** his Motion to Amend to the extent it seeks to add Underwood and Yanke as defendants.[13]

Although it is not appropriate to amend the Complaint to add Yanke and Underwood, Hanger

---

[13] Hanger also argues that Evans' proposed amendment constitutes an attempt at fraudulent joinder. (*See* Doc. 23.)  While the Court decided the issue of whether to grant Evans' Motion to Amend on other grounds, Hanger's claim of fraudulent joinder deserves mention.  The doctrine of fraudulent joinder allows federal courts to prevent a plaintiff from joining non-diverse defendants against whom he has no real possibility of recovery where such joinder will destroy diversity jurisdiction. *Coyne v. Am. Tobacco Co.* 183 F.3d 488, 493 (6th Cir. 1999) (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). The burden of proving fraudulent joinder is on the removing party and the inquiry is whether the plaintiff has stated "at least a colorable cause of action against [the defendant] in the [Ohio] state courts." *Jerome-Duncan*, 176 F.3d 904, 907 (6th Cir. 1999). The plaintiff's motive for joining new parties is immaterial in the discussion of fraudulent joinder.  *Id.*  Given that both Underwood and Yanke worked on or examined the 2002 prosthetic leg that caused his injury and were the main Hanger personnel involved with Evans' care, there would have been at least a colorable cause of action against both of them in the Ohio state courts if timely brought.  Because Evans' motive for joining the Underwood and Yanke is irrelevant and because Evans would have a colorable cause of action against them in state court, fraudulent joinder would not be a basis to deny Evans' Motion to Amend and to prohibit remand to state court.

does not oppose the proffered amendment to the extent it seeks to add information to the Background Allegations section of the Complaint. The proposed amendments to the Background Allegations section of the Complaint appear designed to comport with the recently heightened pleading standard in federal court and give important details about Evans' accident. Accordingly, the Court **GRANTS** Evans' Motion to Amend solely to the extent the Amended Complaint modifies the Background Allegations section of the Complaint.

### III.  MOTION TO DISMISS

Although Hanger's Motion to Dismiss focuses on why Evans' Motion to Amend should be denied rather than why Evans' claims should be dismissed, its futility argument relates to all aspects of both the original and the proposed Amended Complaint. Hanger's contention is that Evans cannot prevail on any of his claims because he no longer has access to the prosthesis in question and, therefore, cannot satisfy the elements of a product liability claim. (Doc. 21 at 1.)[14] In contrast, Evans asserts that, though he no longer has the prosthetic leg, that fact is not fatal to his case. Evans argues that he can still prevail in this matter because Hanger worked extensively on the leg, there are records of Evans' visits to Hanger, and Yanke Bionics examined the socket after it broke and could offer qualified expert opinions about the leg. (Doc. 22 at 3.)

#### A.  Standard of Review

The Court may dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion under 12(b)(6) is to test the sufficiency of the complaint – not to decide the merits of the case.

---

[14] The prosthetic leg that caused Evans' accident was destroyed by Yanke Bionics, Evans' new prosthetist. (Doc. 21 at 5.)

It is well-established that a complaint need not set forth in detail all of the particularities of the plaintiff's claim. *See Myers v. Delaware Co.*, No. 2:07-cv-844, 2009 U.S. Dist. LEXIS 98143, *6 (S.D. Ohio Oct. 22, 2009). Instead, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Id*. The Supreme Court has indicated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)("[A] formulaic recitation of the elements of a cause of action" is insufficient).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is <u>plausible</u> on its face." *Twombly*, 550 U.S. at 570 (emphasis added). The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Therefore, where a complaint pleads facts that are "merely consistent with" the defendant's liability, "its stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citing *Twombly*, 550 U.S. at 557). Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.

A district court considering a motion to dismiss must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *See*

*Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Iqbal*, 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Iqbal*, 129 S.Ct. at 1950. In sum, the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B. Counts One and Two

In its Motion to Dismiss, Hanger focuses on the fact that Evans does not have the prosthesis that caused the accident. Hanger argues that, without physical possession of the prosthesis, Evans will not be able to provide expert testimony or to produce other evidence necessary for him to prevail on his claims. (Doc. 21 at 4.) Section 2307.73 of the Ohio Revised Code, however, provides that:

> [i]f a claimant is unable because the manufacturer's product in question was destroyed to establish by direct evidence that the manufacturers product in question was defective ...then, consistent with the Rules of Evidence, *it shall be sufficient for the claimant to present circumstantial or other competent evidence* that establishes, by a preponderance of the evidence that the manufacturer's product in question was defective in any one of the four respects specified in division (A)(1) of this section.

Ohio Rev. Code § 2307.73(B) (emphasis added); s*ee also Yanovich v. Zimmer Austin, Inc.*, 255 Fed. Appx. 957, 966 (6th Cir. 2007). The fact that Evans no longer has the prosthetic leg, therefore, is not fatal to Evans' claims if he can otherwise present circumstantial evidence of the alleged defects. Hanger's argument about insufficient evidence, moreover, is an argument that should be made in connection with a motion for summary judgment rather than a motion to dismiss. Obviously, the Court cannot predict what types of evidence the parties will generate during discovery, which is what

-14-

distinguishes a motion to dismiss from a motion for summary judgment.[15]

### C. Counts Three through Seven

#### 1. Counts Three Through Seven are Abrogated

While Hanger does not attack these counts on grounds other than Evans' inability to produce the prosthesis, the Court does so *sua sponte*. Peculiarly, both parties failed to notice that, while the first two causes of action in Evans' Complaint were brought pursuant to Ohio's product liability statutes, the remaining five causes of action are common law claims that have been abrogated by the Ohio Products Liability Act (the "OPLA"), O.R.C. § 2307.71 *et seq*.[16] These claims are abrogated because, when the Ohio General Assembly enacted the current version of the OPLA, which became effective on April 7, 2005, it abrogated all common law claims relating to product liability causes of actions. *See Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, 2009 U.S. Dist. LEXIS 91723, at *41 n.22 (N.D. Ohio Sept. 30, 2009).[17] Specifically, the General Assembly added a section stating that "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability causes of action." Ohio Rev. Code § 2307.71(B). Furthermore, the OPLA applies to "recovery of compensatory damages based on a product liability claim," as well as "[a]ny recovery of punitive damages or exemplary damages in connection with a product liability claim." Ohio Rev.

---

[15] Hanger does not attack Counts One and Two on alternate grounds. Evans should, however, address a defect in Count Two when he drafts his Amended Complaint. This count of his Complaint, of course, alleges defective design, manufacture, and installation. He purports to bring the entirety of this claim under O.R.C. § 2307.75, *et seq.*, however, § 2307.75 does not apply to claims for defective manufacturing: such claims fall under the scope of O.R.C. § 2307.74.

[16] Evans admits that the last five causes of action in his Complaint are common law claims. (*See* Doc. 22 at 3.)

[17] Evans' claims accrued well after the amendments to the OPLA went into effect as his accident occurred in April 24, 2007. (Doc. 24 at 2.)

-15-

Code § 2372(A)-(B). *See also Delahunt v. Cytodyne Techs*, 241 F.Supp. 2d 827, 842 (S.D. Ohio 2003). The OPLA defines "product liability claim" as follows:

> (13) "Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from the following:
>
> (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing or marketing of that product;
>
> (b) Any warning or instruction, or lack of warning or instruction, associated with that product;
>
> (c) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev. Code § 2307.71(A)(13).

Courts routinely dismiss non-statutory product liability claims brought under Ohio law. *See, e.g., Crisp v. Stryker Corp.*, No. 09-cv-02212, 2010 U.S. Dist. LEXIS 51390 (N.D. Ohio May 21, 2010); *Miles v. Raymond Corp.*, 612 F. Supp.2d 913 (N.D. Ohio 2009). Although Evans attempts to distinguish the common law claims from the product liability claims (*see* Doc. 22 at 3), it is "the essential nature of the substantive allegations of [Evans'] claims . . . not the artificial label that [he] attach[es] to the claims" that is dispositive. *Williams v. Baush & Lomb Co.*, No. 2:08-cv-910, 2009 U.S. Dist. LEXIS 83526, at *8 (S.D. Ohio Sept. 14, 2009) (citing *Lawyer's Cooperative v. Muething*, 65 Ohio St.3d 273, 603 N.E.2d 969 (1992)). Accordingly, if the statutory language abrogating common law product liability causes of action encompasses Evans' common law claims, then those claims are extinguished. *See Miles*, 612 F. Supp. 2d at 919. *See also Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 U.S. Dist. LEXIS 84826, at *4 (S.D. Ohio June 17, 2008).

### i. Counts Three and Four - Negligence

In Counts Three and Four of the Complaint, Evans alleges that Hanger negligently failed to provide adequate warnings and that its products were negligently designed, manufactured, or implemented. This, however, is the very same conduct that the OPLA includes in the definition of a "product liability claim." *See* Ohio Rev. Code § 2307.71(A)(13)(a)-(b); *Tompkin v. American Brands*, 219 F.3d 566, 575 (6th Cir. 2000) (noting that "common law negligence claims have been preempted by OPLA.") As a result, the OPLA abrogated Counts Three and Four of the Complaint.

### ii. Count Five - General Negligence

The Fifth Count in the Complaint is general negligence. The claim alleges only that "Plaintiff's injuries were a proximate result of Defendant's negligence, and failure to exercise ordinary care." (Doc. 1-1 at ¶ 34.) The Court cannot decipher what the claim actually seeks to allege and, thus, it falls short of the standard set forth in *Iqbal* and *Twombly*.

### iii. Count Six - Breach of Warranty

The Sixth Count in the Complaint is a claim for breach of warranty. The claim states that, "in supplying, delivering, and/or implanting said prosthetic device, Defendants expressly or impliedly warranted that said device was merchantable, fit, and/or safe for the ordinary and particular purpose for which it was sold and that it was free from all defects" and that Hanger breached those warranties. (Doc. 1-1 at ¶¶ 37-38.) In product liability cases involving breach of warranty, when it is impossible to separate a plaintiff's warranty claim from the product at issue, then the common law claim is subject to preemption by the OPLA. *Miles*, 612 F. Supp. 2d. at 923. *See* Ohio. Rev. Code § 2307.71(A)(13)(c). The claim asserted by Evans is, without question, based on the allegation that the prosthetic leg failed to conform to the express and implied warranties. Furthermore, Evans'

-17-

Complaint does not contain any allegation that Hanger breached a warranty for some unrelated product. Accordingly, Count Six of the Complaint is abrogated by the OPLA because it is impossible to separate Evans' breach of warranty claim from Evans' accident involving the 2002 prosthetic leg.

### iv. Count Seven - Punitive Damages

The Seventh Count in the Complaint is for punitive damages. Under O.R.C. § 2307.80:

> punitive or exemplary damages shall not be awarded against a manufacturer or supplier in connection with a product liability claim unless the claimant establishes, by clear and convincing evidence, that the harm for which the claimant is entitled to recover compensatory damages . . . was the result of the misconduct of the manufacturer or supplier in question that manifested a flagrant disregard of the safety of persons who might be harmed by the product in question.

Ohio Rev. Code § 2307.80. Evans is seeking punitive damages because Hanger allegedly "consciously disregarded the rights and safety of consumers, including Plaintiff Jeffrey Evans, and as such, [its] conduct had a great probability of causing substantial harm." (Doc. 1-1 at ¶ 41.) The Court is unclear how Evans' allegations form a basis for punitive damages. Nevertheless, because Evans' entire lawsuit involves claims that must be brought under the OPLA, if he wishes to pursue punitive damages, he needs to do so under the standard for punitive damages outlined in O.R.C. § 2307.80. Count Seven of the Complaint, therefore, is abrogated by the OPLA.

### 2. Counts Three Through Seven are Dismissed Without Prejudice

Courts typically dismiss common law causes of action abrogated by the OPLA without prejudice to allow plaintiffs the opportunity to re-plead their common law claims under the applicable provision of the OPLA.[18] *See*, *e.g.*, *Williams*, 2009 U.S. Dist LEXIS 83526 at *12; *Crisp*, 2010 U.S. Dist. LEXIS 51390 at *10. Accordingly, the Court **DISMISSES** Counts Three through Seven of the

---

[18]In order to avoid confusion with respect to product liability claims, "[c]laims that are authorized by the OPLA should be pled with reference to the applicable provisions of the OPLA." *Stratford*, 2008 U.S. Dist. LEXIS 84826 at *15-16.

Complaint without prejudice so that Evans can re-plead those claims, if apropriate, pursuant to the OPLA.

IV. **CONCLUSION**

For the aforementioned reasons, the Court **DENIES** Evans' Motion to Amend to the extent that it adds new defendants to the case and **GRANTS** the remainder of the motion. Furthermore, the Court **DENIES** Hanger's Motion to Dismiss, but *sua sponte* **DISMISSES** Counts Three through Seven of the Complaint without prejudice and gives Evans leave to re-plead his claims, if possible, under the OPLA. Regardless of whether Evans is able to re-pleads his claims, however, Evans shall file a Second Amended Complaint within ten (10) days of the date of this Order.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

Dated: August 18, 2010